IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| DIANNER MCCLOUD, ) | Civil Action No. 3:09-2536-HFF-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **REPORT AND RECOMMENDATION** |
| ) | |
| MICHAEL J. ASTRUE, ) | |
| COMMISSIONER OF SOCIAL SECURITY ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her claim for Disability Insurance Benefits ("DIB").

## ADMINISTRATIVE PROCEEDINGS

Plaintiff applied for DIB on December 19, 2005, alleging disability since September 15, 2005 due to arthritis, bone spurs in her neck and shoulders, lower back problems, high blood pressure, leg problems, and left elbow pain. (Tr. 124). Plaintiff's application was denied initially and on reconsideration, and she requested a hearing before an administrative law judge ("ALJ"). A hearing was held on August 15, 2008, at which Plaintiff and a Vocational Expert ("VE") appeared and testified. The ALJ issued a decision dated November 19, 2008, finding that Plaintiff was not disabled because she was able to perform her past relevant work as a machine operator, slitter/packer, and order puller.

Plaintiff was fifty-eight years old at the time of the ALJ's decision. She has a twelfth grade education with a certificate from a technical college.

The ALJ found (Tr. 12-24):

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since September 15, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: cervical and lumbosacral degenerative disc disease, left hip bursitis and degenerative joint disease (20 CFR  404.l521 *et. seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the RFC to lift/carry a maximum of 25 pounds frequently and 50 pounds occasionally, to stand/walk for six of eight hours in a workday, and to sit for six of eight hours in an eight-hour workday, can do only occasional climbing of ramps/stairs, can do no climbing of ladders/ropes/scaffolds, can do frequent balancing, stooping, kneeling, crouching, crawling and overhead reaching, and needs to avoid concentrated exposure to hazards such as unprotected heights and moving machinery.

6. The claimant is capable of performing past relevant work as a machine operator, slitter/packer and order puller. This work does not require the performance of work-related activities precluded by the claimant's RFC (20 CFR 404.1565).

7. The claimant has not been under a disability, as defined in the Social Security Act, from September 15, 2005 through the date of this decision (20 CFR 404.1520(f)).

On August 1, 2009, the Appeals Council denied Plaintiff's request for review of the ALJ's decision, thereby making the determination of the ALJ the final decision of the Commissioner. Tr. 1-3. Plaintiff then filed this action in the United States District Court on September 28, 2009.

**STANDARD OF REVIEW**

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. Richardson v. Perales, 402 U.S. 389 (1971) and Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months...." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

**MEDICAL RECORD**

Plaintiff has been treated for various impairments at the Piedmont Internal Medicine group in Spartanburg, South Carolina since 2001. See Tr. 225. In January 2005, an x-ray of Plaintiff's cervical spine revealed "mild" degenerative changes and "mild" spurring, but was noted to be otherwise normal. Tr. 171. Dr. Vicki Arlauskas, a physician with Piedmont Internal Medicine, wrote on January 19, 2005 that Plaintiff's blood pressure was "okay." She noted that Plaintiff complained of left elbow pain and neck pain that was eased with over-the-counter medication. Tr. 163. On February 7, 2005, Plaintiff reported that her neck pain had improved somewhat. Tr. 161. Plaintiff was not examined by Dr. Arlauskas again until September 13, 2005. At that time, Plaintiff complained that she had pain which radiated into her hips and ankles. Tr. 159-160. An x-ray of her lumbar spine the same day showed "minimal" osteophytosis and "incidental" calcifications. Tr. 167. On September 27, 2005, Plaintiff complained of significant lower back pain, but was noted to be in

only "mild" distress. She reported that she was a little better after taking Daypro and Skelaxin. Dr. Arlauskas wrote that Plaintiff could go back to work on October 3, 2005, but with the restrictions of not being able to walk upstairs. Tr. 156-157.

Plaintiff next returned to Dr. Arlauskas on January 16, 2006. Plaintiff reported that she quit her job because of irritation within her back area and an inability to sit or stand for a long period of time. Dr. Arlauskas diagnosed Plaintiff with degenerative disc disease with probable osteoarthritis. She questioned the severity of Plaintiff's impairments, ordered an MRI of Plaintiff's lumbosacral spine, and referred Plaintiff to an orthopedist. Tr. 238-239. On January 20, 2006, an MRI of Plaintiff's lumbar spine revealed only degenerative change of the articulating facets with no focal protrusion or extrusion of the disk and that the spinal canal and neural foramina appeared adequate throughout the lumbar spine. Tr. 193.

Dr. Gerald Rollins, an orthopedist, examined Plaintiff on January 25, 2006. Plaintiff complained of pain in her low back going down both legs into her ankles, and left knee discomfort. She reported that NSAIDs had helped her a bit. Dr. Rollins' examination revealed that Plaintiff was able to walk about easily, without using a cane or crutch; she had diffuse tenderness in her lumbar spine, but good range of motion and no muscle spasm; she had good range of motion in her hips, knees, and ankles; and she was able to move "easily and without much in the way of pain." X-rays revealed only "a little bit [of] arthritis" in her lumbar spine, and an MRI was noted to be "unremarkable." Dr. Rollins wrote that there was no obvious reason for Plaintiff's complaints of pain, opined that she was not a candidate for surgery, and opined that Plaintiff should not be using any narcotics. Tr. 177-179.

In February 2006, Dr. Dale Van Slooten, a State agency medical consultant, completed a Physical Residual Functional Capacity Assessment form. Dr. Van Slooten opined that Plaintiff retained the residual functional capacity to occasionally lift and/or carry up to fifty pounds; frequently lift and/or carry up to twenty-five pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and had unlimited capacity to push and/or pull. Tr. 181-188.

On March 1, 2006, Dr. Arlauskas noted that Plaintiff still had some problems with degenerative disc disease and prescribed Celebrex and exercise. It was noted that Plaintiff had been doing her "abdomen launcher" and her treadmill. Tr. 236-237.

On May 3, 2006, Dr. William Crosby, a state agency medical consultant, reviewed Plaintiff's records. He opined that Plaintiff had the ability to occasionally lift and/or carry up to fifty pounds; frequently lift and/or carry up to twenty-five pounds; stand and/or walk for about six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; and had unlimited capacity to push and/or pull. Tr. 199-206.

On July 3, 2006, Dr. Arlauskas thought that Plaintiff had arthralgias which were probably related to osteoarthritis. She noted that an appointment with rheumatology would be set up "since [Plaintiff] had a completely negative orthopedic evaluation." Tr. 234-235.

On July 12, 2006, Plaintiff was examined by Dr. Muthamma Machimada, a rheumatologist. Dr. Machimada wrote that she could not state a reason for Plaintiff's complaints of significant pain given the fact that the MRI showed only minimal degenerative arthritis. She recommended that Plaintiff undergo additional x-rays and blood work, which Plaintiff declined. Injections of Kenalog and Lidocaine to the subacromial and trochanteric bursa areas were done. Tr. 219-221. On August

5

23, 2006, Plaintiff's pain was reportedly much improved and Dr. Machimada recommended that Plaintiff continue with her prescribed medications and also use over-the-counter medication (capsaicin). Tr. 217. On November 3, 2006, Dr. Arlauskas noted that Plaintiff had received help with her hip and shoulder pain from Dr. Machimada's injections. Tr. 232-233. On November 28, 2006, Dr. Machimada noted that Plaintiff was doing well on Mobic and capsaicin. Tr. 215.

Plaintiff does not appear to have sought treatment again until March 2007, when she was examined by Dr. Arlauskas. Injections to her hip and shoulder were noted to have helped for a few months. Plaintiff complained of dizziness, but nothing was seen on physical examination. Tr. 230-231. On August 6, 2007, Dr. Machimada noted that she was seeing Plaintiff for the first time in eight months. She administered injections to Plaintiff's trochanteric and subacromial bursa areas, and changed Plaintiff's medication for osteoarthritis from Mobic to Daypro. Tr. 212-213. Dr. Machimada adjusted Plaintiff's medications on October 8, 2007 due to Plaintiff's complaints of nausea. Tr. 210. On November 5, 2007, Dr. Arlauskas noted that Plaintiff was in no significant distress. Plaintiff's strength was normal in all her extremities and her neurologic examination was normal. Tr. 227-228. On January 11, 2008, Dr. Machimada changed Plaintiff's medication to Ultram after Plaintiff complained of having some dyspepsia while on Relafen. Tr. 208. She injected Plaintiff's bilateral subacromial and right trochanteric bursa areas on March 17, 2008. Tr. 207.

An MRI of Plaintiff's lumbar spine on March 20, 2008, revealed some facet arthropathy and degenerative disc changes. The findings, however, were noted to be unchanged from Plaintiff's January 2006 MRI. Tr. 223-224. On April 16, 2008, pain management specialist Dr. Philip LaTourette administered a facet joint injection to Plaintiff at bilateral L4 and bilateral L5. Plaintiff reported a decrease in pain. Tr. 240-241.

On May 2, 2008, almost eight months after she had last examined Plaintiff, Dr. Arlauskas wrote a letter to Plaintiff's attorney in which she stated that Plaintiff had significant limitations as a result of degenerative disc disease. Dr. Arlauskas opined that Plaintiff could only occasionally lift ten pounds; should not bend, stoop, kneel, crouch, reach, push, or pull; could not stand or walk for more than twenty to thirty minutes at one time; could not sit for more than twenty to thirty minutes at one time; and that her pain would "likely" impair her ability to concentrate for extended periods of time. Tr. 225-226.

On June 16, 2008, Plaintiff reported to Dr. Machimada that she had done better with regard to her pain in her shoulder and right hip after receiving cortisone injections for underlying bursitis. She also reported that she had received an epidural shot in the lower back from Dr. LaTourette which, with her daily use of Celebrex, had helped. Dr. Machimada instructed Plaintiff to continue her prescribed medication regimen. Tr. 242-243.

In a letter to Plaintiff's attorney dated July 24, 2008, Dr. Machimada stated that he agreed with the limitations expressed by Dr. Arlauskas in her May letter. He believed that much of Plaintiff's back and leg pain was a result of degenerative deterioration of Plaintiff's spinal facet joints. He stated that arthritis in these joints may cause pain that can be aggravated by standing, sitting, twisting, turning, and bending. Tr. 244-245.

## **HEARING TESTIMONY**

At the hearing before the ALJ, Plaintiff testified that she stopped working in September 2005 due to back, hip, and knee pain. Tr. 39-40. She said her pain was a five or six, on a scale of one to ten, "all the time," and injections provided relief for only a "few days." Tr. 45-46. She described a "sharp pain in the lower back [which] radiates around to the hip, the knee and down just below my

ankle." Tr. 45. Plaintiff testified that doing virtually any activity, even combing her hair or taking a bath, caused her pain to increase to level ten. Tr. 46. She said she could sit for "maybe" twenty minutes at a time, and stand or walk for fifteen or twenty minutes. Tr. 52-53. Plaintiff stated that she goes to church once a week, but has to go outside to walk around because of the pain. Tr. 54.

Plaintiff acknowledged she had undergone no surgery or physical therapy, and said she could cook, wash dishes and clothing, occasionally iron, sweep and mop the floor, dust, clean the kitchen and living room, and occasionally clean the bathroom. Tr. 59-60. She said that when she tries to wash dishes, she has to sit on a stool to finish. Tr. 57. Plaintiff testified that she had traveled to North Carolina to visit her mother and to Illinois for a funeral. Tr. 60-61.

## DISCUSSION

Plaintiff alleges that: (1) the ALJ failed to give controlling weight to the opinions of two of her treating physicians; (2) the ALJ failed to give adequate reasons for rejecting/ignoring the opinions of these two treating physicians; (3) the ALJ failed to give adequate reasons for rejecting/ignoring Plaintiff's testimony regarding her pain and limitations; (4) the ALJ's finding that Plaintiff has the RFC for medium work and can return to her prior jobs is not supported by substantial evidence; and (5) the ALJ erred in failing to find that Plaintiff has a "severe" impairment of facet arthropathy in her cervical, thoracic, and lumbar spine. The Commissioner contends that the ALJ's decision is supported by substantial evidence[1] and free of reversible legal error.

---

[1]Substantial evidence is:
> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

(continued...)

A.   Treating Physicians

Plaintiff argues that the ALJ erred in failing to give controlling weight to the opinions of Dr. Arlauskas and Dr. Machimada because they treated her on a regular basis for several years, they are in agreement as to Plaintiff's limitations, and their opinions are well supported. Plaintiff also argues that these opinions are supported by Plaintiff's March 2008 MRI. Plaintiff asserts that the ALJ failed to give adequate reasons for rejecting the opinions of these two treating physicians. The Commissioner contends that the ALJ properly considered these opinions and determined that they were entitled to little weight because they were not supported by the medical evidence and record as a whole, they were based in part on Plaintiff's subjective complaints, Plaintiff only received conservative care, and their opinions are contradicted by Plaintiff's wide range of daily activities.

The medical opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record. See 20 C.F.R. § 416.927(d)(2); Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Thus, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). Under such circumstances, "the ALJ holds the discretion to give less weight to the testimony of a treating physician in the face of persuasive contrary evidence." Mastro v. Apfel, 270 F.3d at 178 (citing Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir.1992)).

---

[1](...continued)
Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

9

Under § 404.1527, if the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must consider the following factors to determine the weight to be afforded the physician's opinion: (1) the length of the treatment relationship and the frequency of examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in which he is rendering an opinion. 20 C.F.R. § 404.1527(d).  Social Security Ruling 96-2p provides that an ALJ must give specific reasons for the weight given to a treating physician's medical opinion.  SSR 96-2p.

Here, the ALJ's decision to discount the opinions of Drs. Arlauskas and Machimada is supported by substantial evidence.  The ALJ specifically found that these opinions were not supported by the medical evidence and the record as a whole, and were instead based in part on Plaintiff's own subjective complaints.  Tr. 22.  As discussed below, the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence.

Objective medical evidence in the record fails to support the limitations set out by Dr. Arlauskas and Machimada.  An x-ray of Plaintiff's cervical spine in January 2005 showed only some mild degenerative changes and mild spurring.  Tr. 171.  X-rays of her lumbar spine showed only minimal osteophytosis and incidental calcifications in September 2005.  Tr. 167.  In January 2006, an MRI of Plaintiff's lumbar spine showed only degenerative change in the articulating facets.  Tr. 183.  The 2008 MRI of Plaintiff's lumbar spine only showed some facet arthropathy throughout the lumbar spine with no interval change from the January 2006 MRI.  Dr. Rollins, an orthopedist, noted that the MRI was unremarkable for significant disc herniation, disc degeneration, or nerve compression. Tr. 179. Tr. 223-224.  See Johnson v. Barnhart, 434 F.3d 650, 658 (4th Cir. 2005)(An

ALJ may reject alleged limitations that are inconsistent with the medical evidence); Craig, 76 F.3d at 590 (a physician's opinion that is not supported by clinical evidence or is inconsistent with other substantial evidence should be accorded significantly less weight).

The ALJ's decision to give less weight to Drs. Arlauskas and Machimada's opinions because they were based largely upon Plaintiff's self-reported symptoms is also supported by substantial evidence. See Mastro, 270 F.3d at 178 (ALJ may accord less weight to a treating physician's opinion that is based largely on a claimant's self-reported symptoms). Plaintiff was noted to be in "no acute distress" on almost every occasion she was examined by these physicians and Dr. Arlauskas questioned the severity of Plaintiff's impairment in January 2006. Tr. 191. Dr. Machimada indicated that he could see no reason for Plaintiff's complaints of significant pain given that her MRI showed only minimal degenerative arthritis (Tr. 22.). See, e.g., Edwards v. Sullivan, 937 F.2d 580, 1584 (11th 1991)("If a treating physician is unsure of the accuracy of his findings and statement, there is certainly no legal obligation for te ALJ to defer to the treating physician's report"). The ALJ's decision is also supported by the findings of orthopedist Dr. Rollins who examined Plaintiff and concluded that there was no obvious reason for Plaintiff's complaints. Tr. 179.

Contrary to Plaintiff's argument, the ALJ properly considered that Plaintiff received only conservative treatment for her allegedly disabling impairments. The Fourth Circuit has held that it is proper for an ALJ to consider the inconsistencies between a claimant's level of treatment received and her claims of disabling symptoms. See Mickles v. Shalala, 29 F.3d 918, 930 (4th Cir. 1994). Here, Plaintiff's physicians treated her conservatively primarily with muscle relaxers and NSAIDS. Plaintiff admitted that she had not undergone any surgery or physical therapy for her impairments.

B.    Credibility

Plaintiff alleges that the ALJ failed to give adequate reasons for finding that her testimony was not entirely credible. She argues that the ALJ should have given weight to the fact that Plaintiff has undergone regular medical treatment for chronic pain since 2001, and has been treated with a variety of medications and injections. Plaintiff also argues that the ALJ improperly rejected Plaintiff's testimony because she could not provide objective evidence of pain. The Commissioner contends that the ALJ reasonably concluded that Plaintiff's subjective complaints were not fully credible based on the medical record, Plaintiff's activities of daily living, and inconsistencies in her testimony compared to the record.

In assessing credibility and complaints of pain, the ALJ must: (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a claimant's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d at 591-92; Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

The ALJ properly considered Plaintiff's credibility by using the two-part test outlined above and considering the medical and non-medical record. The medical record, as detailed above, supports the ALJ's conclusion that Plaintiff could perform a range of medium work. Plaintiff's daily activities also support the ALJ's decision. Plaintiff testified that she cooked, folded clothes, ironed every once in a while, swept, dusted, cleaned her bathroom now and then, cleaned her living room and kitchen, traveled to North Carolina to visit her mother, and traveled to Illinois for a funeral. Such activities do not support her claims of extreme functional limitations. See Johnson, 434 F.3d at 658 (daily activities supported ALJ's determination that the plaintiff was not disabled).

The ALJ's decision to discount Plaintiff's credibility based on inconsistencies between her testimony and the medical record is also supported by substantial evidence. See Mickles, 29 F.3d at 921 (inconsistencies between a claimant's alleged symptoms and the evidence of record may support a finding that the claimant is not fully credible); Hunter v. Apfel, 101 F.Supp.2d 384, 392 (4th Cir. 2000), citing 20 C.F.R. 404.1529(c)(4)("An ALJ should consider "inconsistencies in the evidence to determine when a claimant's subjective claims of pain can reasonably be accepted."). At the hearing before the ALJ, Plaintiff stated that injections were effective in relieving her pain for only a few days, but she admitted to her treating physician that they were effective for months. Plaintiff said that her pain was a five or six out of ten all the time, but reported to her physicians that her pain decreased with medications and injections. Plaintiff claimed to suffer from dizziness three to four times per week because of high blood pressure, but the medical records reveal only one occasion (Tr. 230) when she complained of such symptoms. Dr. Arlauskas noted numerous times that Plaintiff's blood pressure was well controlled or adequately controlled with medication. If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v.

13

Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986). Additionally, the medical records revealed, in contrast to Plaintiff's testimony that she was unable to lift much weight or walk very far, that she had no muscle wasting or decreased strength.

    C.    <u>Severe Impairment</u>

Plaintiff argues that the ALJ erred in not finding that she had an additional "severe" impairment of facet arthropathy. Specifically, she claims that the ALJ made no mention of her impairment of facet arthropathy as described by Dr. Machimada. The Commissioner contends that the ALJ's consideration of Plaintiff's severe impairments was proper.

The ALJ reasonably included any limitations Plaintiff experienced as a result of facet arthropathy in his finding that Plaintiff suffered from the "severe" impairments of degenerative disc disease and degenerative joint disease. Tr. 12. Facet arthropathy is a degenerative disease of the facet joints in the spine. <u>See</u> <u>Sandoval v. Barnhart</u>, 209 Fed.Appx. 820, 824 n. 2 (10th Cir. 2006)(noting that facet arthropathy is more commonly known as degenerative arthritis that affects the facet joints in the spine); <u>Dorland's Illustrated Medical Dictionary</u> 156 and 663 (30th ed. 2003)(arthropathy is a joint disease, a facet is "a small plane surface on a hard body, as on a bone"); http://arthritis.about.com/od/spine/p/facet_joints.htm (last visited January 18, 2011).

The ALJ specifically noted the results of the x-rays and MRIs and discussed Dr. Machimada's and the other physicians' interpretations of these results. He considered the effects of all of Plaintiff's impairments in determining Plaintiff's RFC. Additionally, any error in not stating that Plaintiff's facet arthropathy was a "severe" impairment is harmless. Plaintiff has not pointed to any

14

evidence in the record which would suggest that her facet arthropathy resulted in functional limitations in excess of the limitations found.[2]

D.     RFC/Past Relevant Work

Plaintiff asserts that the ALJ's findings that Plaintiff had the RFC for medium work and could return to her past relevant work are not supported by substantial evidence. Specifically, Plaintiff argues that the opinions of her treating physicians and Plaintiff's testimony compel a finding that she is unable to perform medium work or any of her past jobs. The Commissioner argues that the ALJ reasonably found that Plaintiff retained the RFC to perform medium work.

The ALJ's findings that Plaintiff could perform a range of medium work and thus could perform her past relevant work as a machine operator, slitter/packer, and order puller is supported by substantial evidence. As discussed above, the ALJ's decision to discount the opinions of Drs. Arlauskas and Machimada is supported by substantial evidence as is the ALJ's determination that Plaintiff's subjective complaints were not fully credible. As discussed above, the objective medical evidence did not show significant problems in Plaintiff's cervical and lumbar spine. Dr. Rollins' examination supports the ALJ's determination that Plaintiff could perform a range of medium work. In finding that Plaintiff retained the RFC to perform medium work with some postural limitations, the ALJ reasonably relied on the opinions of the state agency physicians (Drs. Van Slooten and Crosby) who reviewed the record and concluded that Plaintiff could perform medium work (Tr. 181-188, 199-206). See 20 C.F.R. §§ 404.1527(f)(2) and 416.927(f)(2); SSR 96-6p ("Findings of fact made by State agency ... [physicians ]... regarding the nature and severity of an individual's

---

[2]It is the claimant's burden to show that he or she had a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 145 n. 5 (1987).

impairments must be treated as expert opinion of non-examining sources at the [ALJ] and Appeals Council level of administrative review.").

The ALJ also properly found that Plaintiff could perform her past relevant work. At the fourth step of the disability inquiry,[3] a claimant will be found "not disabled" if the claimant is capable of performing his or her past relevant work either as he or she performed it in the past or as it is generally required by employers in the national economy. SSR 82-61. The claimant bears the burden of establishing that he or she is incapable of performing his or her past relevant work. See Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995); Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992).

At the hearing, the ALJ asked the VE about the demands of Plaintiff's past relevant work. The Commissioner may employ the services of a VE at step four of the sequential evaluation process to help determine whether a claimant can perform his or her past relevant work. See 20 C.F.R. §§ 404.1560, 416.960. The VE testified that Plaintiff's past work as a machine operator/slitter was light exertion and semi-skilled; her work as a packer was light exertion and unskilled; and her work as an order puller was medium exertion and unskilled. Tr. 64. The VE testified that a claimant who (like Plaintiff) had the RFC to occasionally lift up to fifty pounds; frequently lift up to twenty-five pounds; sit, walk, or sit for six hours in an eight-hour workday; occasionally climb (but not climb ropes, ladders, or scaffolds); and frequently kneel, crouch, crawl, stoop, or reach overhead, could perform all of Plaintiff's past relevant work. Tr. 64-65.

---

[3] In evaluating whether a claimant is entitled to disability insurance benefits, the ALJ must follow the five-step sequential evaluation of disability set forth in the Social Security regulations. See 20 C.F.R. § 404.1520. The ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to her past work, and (5) if not, whether the claimant retains the capacity to perform specific jobs that exist in significant numbers in the national economy. See id.

16

## **CONCLUSION**

Despite Plaintiff's claims, she fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, Richardson v. Perales, supra. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, Blalock v. Richardson, supra. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. Shively v. Heckler, supra. It is, therefore,

RECOMMENDED that the Commissioner's decision be **affirmed**.

Joseph R. McCrorey
United States Magistrate Judge

January 20, 2011
Columbia, South Carolina